IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Magistrate Judge Kathleen M. Tafoya**

Civil Action No. 10–cv–02667–MSK–KMT

THOMAS DECKARD,

    Plaintiffs,

v.

STERLING CONSTRUCTION COMPANY, and
STERLING CONSTRUCTION MANAGEMENT, L.L.C.,

    Defendants.

## ORDER

This matter is before the court on "Plaintiff's Motion to Amend Complaint to [sic] Additional Negligence Claims" (Doc. No. 51, filed June 10, 2011) and "Plaintiff's Motion to Amend Complaint to Supplement Their [sic] Claim For Negligence by Adding a Claim for Exemplary Damages" (Doc. No. 59, filed June 13, 2011). Defendants responded in opposition to both motions on July 16, 2011. (Doc. No. 71 [Resp.].) Plaintiff filed a Reply as to both motions on August 1, 2011. (Doc. No. 79 [Reply].) The matter is ripe for review and ruling.

## FACTUAL BACKGROUND

The following facts come from Plaintiff's Complaint (Doc. No. 2 [Compl.]) and the parties' briefing with respect to the present motions. This case concerns injuries allegedly suffered by Plaintiff on June 11, 2008 while working on a job site near Sterling, Colorado. (Resp. at 1.) Defendants were operating a truck crane, or boom truck, on a bridge above the

South Platte River to remove equipment from the river below. (Compl. ¶¶ 6-7; Mot. at 2.) Defendants' truck operator allegedly extended the boom so that it either made contact with overhead power lines or, alternatively, came close enough to the overhead power lines for an electrical charge to "jump" from the power lines to the boom. (Compl. ¶ 7; Mot. at 2.) Thus, when one of Defendants employees, Javier Perez, grabbed the hook at the end of the boom apparently to attach it to the equipment in the river he was lethally electrocuted. (Compl. ¶ 7; Mot. at 2-3.) Plaintiff observed Mr. Perez shaking uncontrollably and, in an effort to assist him, grabbed Mr. Perez's body. (Compl ¶ 7; Mot. at 3.) The electrical charge jumped from Mr. Perez to Plaintiff, who was thereby also severely electrocuted. (*Id.*)

## ANALYSIS

In "Plaintiff's Motion to Amend Complaint to [sic] Additional Negligence Claims," Plaintiff seeks to add more "refined" negligence claims based on theories of vicarious liability; negligence *per se*; negligent hiring, training, and supervision; and negligent entrustment. In "Plaintiff's Motion to Amend Complaint to Supplement Their [sic] Claim For Negligence by Adding a Claim for Exemplary Damages," Plaintiff proposes to add a claim for exemplary damages pursuant to Colo. Rev. Stat. § 13-21-102.

As a threshold matter, Defendants argue that both of Plaintiff's motions should be denied because they are untimely. More specifically, Defendants argue that while Plaintiff "filed a motion for leave to amend " attaching the proposed amended complaint by June 10, 2011—the deadline to join parties and amend the pleadings (*see* Minute Order, Doc. No. 49, entered May

24, 2011)—he "did not amend its [sic] pleadings on that date," and therefore his proposed amendments are necessarily untimely. (Resp. at 2-3.)

While "[u]ntimeliness alone is a sufficient reason to deny leave to amend," *Frank v. U.S West,* 3 F.3d 1357, 1366 (10th Cir. 1993), the court finds that Plaintiff's motions were clearly timely. Defendants' construction of the deadline to join parties and amend pleadings, while marginally plausible at first blush, strains credulity upon a slightly more probing inquiry. More specifically, where court leave is required to amend the pleadings—which is quite often the case, *see* Fed. R. Civ. P. 15(a)—Defendants' construction would require the party moving to amend to anticipate not only the amount of time it will take to fully brief the issue—which may vary depending on whether the non-moving party opposes the motion or seeks an extension of time to respond—but also the time that the matter will be under court advisement. Thus, because Defendants' construction would essentially subject the moving party to the caprice of both the nonmoving party and the court, it simply cannot withstand scrutiny. Instead, to be timely, a motion for leave to amend must only be filed, not granted, by the deadline to amend the pleadings. Plaintiff's motions are therefore timely.

Having addressed Defendants' general timeliness objection, the court notes that all other issues regarding "Plaintiff's Motion to Amend Complaint to [sic] Additional Negligence Claims" have been resolved. More specifically, Defendants lodge only one objection to the relief sought in that motion—specifically, that Plaintiff's proposed negligence *per se* claims are facially invalid because, under Colorado law, OSHA regulations violations cannot be used to establish a negligence *per se* claim. (Resp. at 15.) In his Reply, Plaintiff concedes that negligence *per se*

claims cannot be premised on a violation of OSHA regulations, and has therefore withdrawn his request to amend with respect to his proposed negligence *per se* claims. (Reply at 2.)

Thus, only "Plaintiff's Motion to Amend Complaint to Supplement Their [sic] Claim" (hereinafter "Mot.") remains to be resolved. The parties' disagree on whether Plaintiff has satisfied the threshold requirements of Colo. Rev. Stat. § 13-21-102 for asserting a claim for exemplary damages.

Pursuant to Fed. R. Civ. P. 15(a), "The court should freely give leave [to amend the pleadings] when justice so requires."

> In the absence of any apparent or declared reason–such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.–the leave sought should, as the rules require, be "freely given."

*Foman v. Davis,* 371 U.S. 178, 182 (1962) (quoting Fed. R. Civ. P. 15(a)(2)).

To determine whether Plaintiff's proposed amendment is futile, the court is guided by the language of Colo. Rev. Stat. § 13-21-102. *See Am. Econ. Ins. Co. v. William Schoolcraft*, No. 05-cv-01890-BNB, 2007 WL 160951, at *1-2 (D. Colo. Jan.17, 2007) (discussing whether Federal Rule of Civil Procedure 15 or section 13-21-102 governs request to amend complaint to add claim for exemplary damages in diversity action, noting lack of definitive opinion on issue in Tenth Circuit, and deciding to apply state statute); *Witt v. Condominiums at the Boulders Ass'n*, No. 04-cv-02000-MSK-OES, 2006 WL 348086, at *7 (D. Colo. Feb.13, 2006) (finding that court must give effect to Colorado statute in evaluating whether exemplary damages claim properly brought in diversity action); *see also Arapahoe Cnty. Water and Wastewater Pub.*

*Improvement Dist. v. HRD Eng'g, Inc.* (*"Arapahoe Cnty. Water"*), No. 08-cv-01788-WYD-KMT, 2009 WL 3158160, at *5-6 (D. Colo. Sept.25, 2009) (applying without discussion Colo. Rev. Stat. § 13-21-102(1)(a), not Rule 15, to determine whether to allow amendment to add exemplary damages claim in diversity action); *State Farm Mut. Auto Ins. Co. v. Fisher*, No. 08-cv-01687-REB-MEH, 2009 WL 1011194, at *4-5 (D. Colo. April 15, 2009) (applying Colorado exemplary damages statute to determine whether amendment appropriate and considering evidence in light of Rule 15 obligation to freely grant leave to amend).

Under Colorado law, an award of exemplary damages is permissible when "the injury complained of is attended by circumstances of fraud, malice, or willful and wanton conduct." Colo. Rev. Stat. § 13-21-102(1)(a). Here, Plaintiff maintains that a claim for exemplary damages is appropriate because Defendants' conduct contributing to Plaintiff's injuries was willful and wanton. (Reply at 3.)

"Willful and wanton conduct" is conduct "purposefully committed which the actor must have realized was dangerous, done heedlessly and recklessly, without regard to consequences or to the rights and safety of others, particularly the plaintiff." *Id.* § 13-21-102(1)(b). "Where the defendant is conscious of his conduct and the existing conditions and knew or should have known that injury would result, the statutory requirements" are met. *Coors v. Sec. Life of Denver Ins. Co.*, 112 P.3d 59, 66 (Colo. 2005) (citations omitted); *see also U.S. Fire Ins. Co. v. Sonitrol Mgmt. Corp.*, 192 P.3d 543, 549 (Colo. App. 2008) (quoting *Forman v. Brown*, 944 P.2d 559, 564 (Colo. App. 1996)) (describing willful and wanton conduct as conduct that

"exhibits an intent consciously to disregard the safety of others [and] extends beyond mere unreasonableness").

"A claim for exemplary damages . . . may be allowed by amendment to the pleadings only after the exchange of initial disclosures . . . and the plaintiff establishes *prima facie* proof of a triable issue." Colo. Rev. Stat. § 13-21-102(1.5)(a). In order to establish *prima facie* proof of a triable issue, "[p]laintiffs must articulate '[a] reasonable likelihood that the issue [of whether a defendant's conduct was willful and wanton] will ultimately be submitted to the jury for resolution.'" *Arapahoe Cnty. Water*, 2009 WL 3158160, at *6 (quoting *Leidholt v. Dist. Court*, 619 P.2d 768, 771 (Colo. 1980)). The plaintiff is not required to show that the evidence is sufficient to survive a defendant's motion for summary judgment on the issue of exemplary damages. *E & S Liquors, Inc.*, 2009 WL 837656, at *2 (differentiating the standard for granting leave to amend from evaluation of whether evidence is sufficient to defeat summary judgment). When determining whether a pleading amendment should be permitted, the Court views the evidence in the light most favorable to the plaintiff. *Am. Econ. Ins. Co.*, 2007 WL 160951, at *3; *E & S Liquors, Inc.*, 2009 WL 837656, at *2; *see also Leidholt*, 619 P.2d at 769 (noting that the Court "should grant the plaintiff some leeway in establishing his *prima facie* case").

Here there is no dispute that the parties have exchanged initial disclosures; as such, the only issue is whether Plaintiff has established *prima facie* proof of a triable issue. The court finds that there is sufficient evidence to permit Plaintiff to assert a claim for exemplary damages. Specifically, the evidence submitted by Plaintiff shows that Defendants "had actual knowledge

. . . that operating near power lines without a *properly trained* spotter[1] would be dangerous." (Mot. at 11-12; Ex. 3, Deposition of Terry Alvard, Rule 30(b)(6) designee of Defendants, , 216:20–217:3 ["Alvard Dep."]) (emphasis added). However, prior to Plaintiff's injuries, Defendants' "policy/procedure manual" did not contain any instructions or "documentation concerning spotting of cranes." (Mot. at 12; Alvard Dep. 138:18–139:21.) Moreover, Bobby Thomas, the superintendent of the site where Plaintiff was injured, testified that Defendants "never did give out training for" spotting a crane or boom truck and, more specifically, that he himself had never received any such training. (Mot. at 16; Ex. 5, Deposition of Bobbie Wayne Thomas, 75:15-21 ["Thomas Dep."].)

Similarly, Defendants acknowledged that "*improper* use of a spotter by a crane operator can lead to devastating consequences." (Mot. at 11; Alvard Dep. 168:20-23) (emphasis added.) Nevertheless, beyond a bare assertion of "use a spotter," Defendants did not provide "any specific training [to truck operators] on how to specifically use a spotter." (Mot. at 11; Alvard Dep. 169:23-170:7.)

On these facts, there is a "reasonable likelihood that the issue [of whether a defendant's conduct was willful and wanton] will ultimately be submitted to the jury for resolution." *Arapahoe Cnty. Water*, 2009 WL 3158160, at *6 (quoting *Leidholt*, 619 P.2d at 771). More specifically, there is evidence that Defendants clearly recognized the serious danger of operating

---

[1] According to Plaintiff, a spotter is a "crucial participant in the operation of a crane as the spotter acts as the operators' eyes and spots dangerous situations (like power lines)" from outside of the truck. (Mot. at 11.)

near power lines without a properly trained spotter, as well as the danger of an operator not knowing how to properly use an otherwise well-trained spotter. Yet, there is also evidence supporting Plaintiff's allegation that Defendants provided no appreciable training to address either of these admittedly grave concerns. Because Plaintiff's evidence demonstrates that Defendants clearly acknowledged these serious dangers, this near, if not absolute, void in training could give rise to an inference that Defendants' intentionally or purposefully disregarded Plaintiff's rights and safety. Accordingly, the court finds that Plaintiff has set forth *prima facie* proof of a triable issue as to whether Defendants' conduct was willful and wanton.

Of course, it should be emphasized that this order does not address the merits of awarding exemplary damages in this case. *Pavelko v. Breg, Inc.*, 09-cv-1461-PAB-KMT, 2010 WL 4220014, at *3 (D. Colo. Oct. 20, 2010). Rather, this order only establishes that exemplary damages can properly be included in the pleadings at this point, and therefore permits Plaintiff to amend his Complaint. *Id.*

Therefore, it is

ORDERED that

"Plaintiff's Motion to Amend Complaint to [sic] Additional Negligence Claims" (Doc. No. 51) is **DENIED** to the extent that Plaintiff seeks to amend his Complaint to add claims for negligence *per se*, and **GRANTED** in all other respects.

It is further

ORDERED that

"Plaintiff's Motion to Amend Complaint to Supplement Their [sic] Claim For Negligence by Adding a Claim for Exemplary Damages" (Doc. No. 59) is **GRANTED**. Plaintiff shall have until **August 16, 2011** to file an amended complaint consistent with this Order.

Dated this 9th day of August, 2011.

BY THE COURT:

*[signature]*

Kathleen M. Tafoya
United States Magistrate Judge